IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

In the matter of the Complaint of S. D. S. )
LUMBER CO. for and on behalf of the Tug )
BRUCE M., Barge SDS No. 2 and Barge ) Civil Case No. 06-1423-KI
SDS No. 6, for the exoneration from or )
limitation of liability, ) OPINION AND ORDER
)
_____ )

      Philip R. Lempriere
      John D. Kimmerlein
      Robert J. Bocko
      Keesal Young & Logan
      1301 Fifth Avenue, Suite 1515
      Seattle, Washington 98101-2603

      Michael E. Haglund
      Haglund, Kelley, Horngren, Jones & Wilder, LLP
      101 S.W. Main Street, Suite 1800
      Portland, Oregon 97204-3226

          Attorneys for S. D. S. Lumber Company

Daniel F. Knox
Noah Jarrett
Hamilton H. Emery
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 S.W. 5th Avenue, Suite 1900
Portland, Oregon 97204

      Attorneys for American West Steamboat Company, LLC

KING, Judge:

This admiralty and maritime claim concerns the contention by the owners of the EMPRESS OF THE NORTH, a passenger vessel, that it was run aground by the tug BRUCE M when the vessels passed each other on the Columbia River. S.D.S. Lumber, owner of the BRUCE M, filed a Complaint for Exoneration from or Limitation of Liability for any claims arising from the incident. The only claimant to the fund is American West Steamboat Co. ("American West"), the owner of the EMPRESS OF THE NORTH. Before the court is S.D.S. Lumber's Motion for Partial Summary Judgment (#26). For the reasons below, I grant the motion.

## FACTS

The tug BRUCE M is a vessel of 72 gross tons and an overall length of 65 feet. The SDS No. 2 is a barge with a length of 180 feet and a width of 50 feet. The SDS No. 6 has a length of 261 feet and a width of 48 feet. The barges have no means of propulsion or steering.

On March 24, 2006, the BRUCE M was pushing the barges up the Columbia River from Fisher Quarry to Bingen, Washington. Both barges were tied fast to the BRUCE M. Neither barge was laden with any cargo during the transit to Bingen and there was no pending freight to

be paid for carrying any cargo on the voyage. No crew was aboard either barge when it passed the EMPRESS OF THE NORTH on the river. At no time during the voyage did the barges become disconnected from each other or from the tug BRUCE M.

As the EMPRESS OF THE NORTH approached buoy 49 on the Columbia River, the BRUCE M contacted the EMPRESS OF THE NORTH and suggested a port-to-port crossing. The wind conditions were between 10 and 15 knots at the time. As the BRUCE M proceeded upstream to pass the EMPRESS OF THE NORTH, a wind caught the bin walls of the barges and caused the barges and the BRUCE M to be pushed into the middle of the channel and to occupy both sides of the channel. The crew of the EMPRESS OF THE NORTH did not think there was room for it to safely pass through the channel. To avoid a collision, the EMPRESS OF THE NORTH left the channel just north of buoy 49 and ran aground.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

S.D.S. Lumber seeks partial summary judgment that under the Limitation of Liability Act of 1851, 46 U.S.C. § 30505, the limitation fund includes only the value of the tug BRUCE M and does not include the value of the two barges. Relying on <u>Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn E. Dist. Terminal</u>, 251 U.S. 48, 40 S. Ct. 66 (1919), and its progeny, S.D.S. Lumber argues that because the tugs are passive instruments of navigation tied to the offending vessel, the BRUCE M, the value of the tugs is not included in the limitation fund under the Act.

American West contends that the wind pushed the barges across the channel, forcing the EMPRESS OF THE NORTH to leave the channel and run aground. American West argues that the barges are not passive instruments because each contributed to the grounding of the EMPRESS OF THE NORTH. Thus, American West contends that the barges are also offending vessels and their value should be included in the limitation fund.

In reply, S.D.S. Lumber argues that neither wind, other atmospheric conditions, currents acting on the barges, nor the fact that they were blown into the channel, can turn the barges into offending vessels under the Act.

A vessel owner's liability for damage caused by the vessel, without the privity and knowledge of the vessel owner, shall not exceed the value of the vessel and pending freight. 46 U.S. C. § 30505(a). <u>Liverpool</u> interpreted a prior form of the Act to mean "that for the purposes of liability the passive instrument of the harm does not become one with the actively responsible vessel [also known as the offending vessel] by being attached to it." <u>Id.</u> at 52.

None of the cases cited by the parties support American West's argument that the barges are also offending vessels because the wind blew them into the channel. The barge was included in the limitation fund in Petition of Western Transportation Co., 194 F. Supp. 834 (D. Or. 1961), because the fire and explosion occurred on the docked barge while its cargo was being discharged. Prior to the fire, the tug had gone on its way after dropping the barge. Id. at 835. The claimant alleged that the fire was caused by a defect in the barge or the negligence of the dock's employees. Id. at 836. Here, American West does not allege that a defect in the barges allowed the wind to blow them. Moreover, the barge crews could not be negligent because neither barge had a crew at the time of the grounding.

The effect of weather and water conditions is discussed in Deep Sea Tankers v. The Long Branch, 258 F.2d 757 (2nd Cir. 1958), cert. denied, 358 U.S. 933 (1959). A tanker ran aground in New York Harbor to avoid a collision with the tug Long Branch towing two carfloats and the tug Metropolitan No. 2 towing three sand scows. Id. at 759-61. At the time of the incident, there was a "strong westerly wind of about 23 miles an hour" that slowed up the progress of the tug flotillas and an ebb current running toward the reef at 1 ½ knots an hour. Id. at 765-66. In finding the tugs solely to blame, the court described the scene:

> On the basis of these facts what happened to the two tows in the few minutes following Hutton's decision to pull in toward South Ferry at Pier 5 is merely an operation of the laws of physics. As the two tugs turned to the West the tows caught the force of the ebb current broadside and they swung out into the river, each now headed West or substantially so, but they were making about as much progress down toward the Range as they were making ahead. Thus strung out the two tows covered a distance of almost 900 feet, including the 100 feet between the two tows, through which 100 feet the tanker could not have passed, and they completely blocked off the tanker.

Id. at 767.

Based on the rule in Liverpool, the court found that the carfloats and sand scows were passive instruments of navigation without motive power of their own. The court held that only the value of the tugs, and not the carfloats and sand scows, would be included in the limitation fund. Id. at 773-74. Moreover, the court distinguished the situation before it, where the carfloats and sand scows made the flotillas "more cumbersome," from a case where the vessel in tow was at fault, for the absence of lights as an example. In the latter case, the value of the vessel in tow would be included in the limitation fund. Id. at 774.

I see nothing to distinguish the situation before me from Deep Sea Tankers. The barges before me got caught by the wind. The carfloats and sand scows in Deep Sea Tankers got caught by the current. Both blocked off another vessel, forcing it out of the channel to run aground. Accordingly, I conclude that the barges tied to the BRUCE M were passive instruments of navigation whose values will not be included in the limitation fund.

## CONCLUSION

S.D.S. Lumber's Motion for Partial Summary Judgment (#26) is granted. I hold that the limitation fund includes only the value of the tug BRUCE M and does not include the value of the two barges.

IT IS SO ORDERED.

Dated this      9th        day of November, 2007.

                                                         /s/ Garr M. King
                                                       Garr M. King
                                                       United States District Judge